# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3436 | **DATE** | 7/23/2004 |
| **CASE TITLE** | Tonia Denham vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion, the plaintiff's and defendant's cross-motions for summary judgment are denied and this matter is hereby remanded back to the Commissioner for Social Security for further proceedings consistent with the Court's opinion. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 26 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 22 |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | 2004 JUL 26 AM 8:09 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TONIA DENHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 3436 |
| ) | |
| JO ANNE BARNHART, Commissioner ) | |
| for Social Security, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**
JUL 2 6 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Tonia Denham's ("Denham") motion for summary judgment and on Defendant Jo Anne B. Barnhart's ("SSA") motion for summary judgment. For the reasons stated below, we deny both motions and remand this case to the Social Security Administration ("SSA") for further proceedings consistent with this opinion.

## BACKGROUND

On September 22, 1998, Tonia Denham injured her back in an automobile accident. Before her accident, Denham earned an associate's degree and held several jobs, including positions as an assistant funeral director from 1991 to 1993, a

1

frozen food packer in 1994 and 1995, and a jewelry salesperson and office manager from 1995 to 1998. Since her accident, Denham has held several part-time jobs, such as a position as a phone interviewer from January to August of 2000. However, Denham has not worked at all since August of 2000.

In the months and years following her accident, Denham has undergone numerous medical examinations and received treatment from numerous physicians. Immediately following her accident, Denham received roughly one month of physical therapy for her back injury. In March and April of 1999, Denham experienced swelling and strain in her right wrist and had a mass surgically removed from her left thumb. In late April and early May of 1999, doctors twice diagnosed Denham with situational depression. Then in October of 1999, her doctors diagnosed her with asthma and fibromyalgia, a chronic condition that causes tenderness and pain in muscle and soft tissue.

In January of 2000, Denham saw Dr. Ellens, her family physician, for a knot in her right hand. Dr. Ellens diagnosed right hand arthralgia and back pain and ordered more physical therapy for Denham's right arm, hand, and back. However, Denham made little progress in therapy and her therapist recommended referral to a pain clinic in March of 2000. That same month, Dr. Ellens diagnosed carpal tunnel syndrome in Denham's right wrist and back pain and instructed Denham to wear a brace on her right wrist. However, another test conducted the previous month had found no such evidence of carpal tunnel syndrome.

In late March 2000, an x-ray of Denham's lower back produced substantially

normal findings, although it also revealed that Denham's L5 vertebrae had anomalously fused with her sacrum, the five fused vertebrae at the base of her spine. In early April, Denham saw Dr. Labanauskas, an orthopedic surgeon, who diagnosed exaggerated lumbar lordosis, or abnormal inward curvature of the lower spine, as well as limited flexion and extension due to pain. He recommended a new lumbosacral corset, epidural steroid injections, Vioxx, and Flexeril.

Denham again saw Dr. Ellens in May 2000, who again diagnosed back pain and asthma, prescribing a back brace, asthma medication, and continued treatment with Vioxx and Flexeril. Upon return visits in July, Dr. Ellens also diagnosed edema and knee strain and instructed Denham to stop taking Flexeril. In early August, Denham again visited Dr. Labanauskas, who prescribed a cane for her swollen knees, writing "arthritis" on the prescription slip.

Also in early August, Denham underwent an MRI of her lumbar spine, which produced normal results. Later that month, Denham saw Dr. Burnet, who diagnosed back pain, mild depression, obesity, controlled asthma, stable irritable bowel syndrome, and insomnia. However, Dr. Burnet's exam found no tenderness in Denham's spine or joint swelling, unlike Denham's prior exams with Dr. Ellens. Dr. Burnet suggested that weight reduction and other non-pharmaceutical methods might aid with Denham's pain. Dr. Burnet also offered to refer Denham for treatment of her depression, but Denham declined.

From August to September 2000, Denham received another round of physical therapy for her back pain. During this period, she received a transcutaneous

electrical nerve stimulation ("TENS") unit to reduce her back pain, which increased Denham's mobility and tolerance of daily activities.

In late September, another x-ray of Denham's cervical spine found bilateral cervical ribs. When Denham consulted with Dr. Jayasanker, a hand surgeon, in late October, he found no conclusive evidence of carpal tunnel syndrome, but suggested that her bilateral cervical ribs might be causing pressure on a nerve and producing her pain.

Denham returned to Dr. Ellens in late September, reporting improved mobility. Dr. Ellens diagnosed lumbar strain, hypertension, and asthma, prescribing Flexeril again and instructing Denham to continue using her TENS unit. She returned to Dr. Burnet in mid December 2000 and again in March 2001. At the latter examination, Burnet again noted edema in Denham's extremities and recommended elastic stockings for the problem. Dr. Burnet also advised Denham to continue using her TENS unit and Amitriptyline for her back pain.

Denham applied for Disability Insurance and Supplemental Security Income disability benefits on May 11, 2000, but the SSA denied her claims. She requested a hearing and appeared before an Administrative Law Judge ("ALJ") on August 21, 2001. At the hearing, the ALJ heard testimony from Denham as well as a vocational expert ("VE"). Denham testified that she suffers from chronic neck and back pain with spasms, arthritis in both knees, asthma, and significant depression, resulting in frequent crying spells and a significantly decreased ability to concentrate.

As evidence of her pain, Denham testified she is severely limited in her ability

to do ordinary housework and daily tasks, describing a daily routine of driving her children to school, preparing food in the microwave, watching television, and talking with her aunt. She testified that she could not clean vegetables or wash more than a single dish. When sitting or laying down, Denham claims that she must prop herself up because of her persistent pain. In addition, Denham testified that she can barely sweep her floor and that she cannot mop at all. Finally, she estimated that she could stand for ten minutes, sit for thirty minutes, walk one and one-half blocks, and lift only a gallon jug without using both hands.

To support her claim of decreased concentration, Denham testified that she has only been able to read three chapters of a 90-page book over the past three months. In addition, she testified that she often forgets things on the stove and that she sleeps poorly at night, resulting in feelings of tiredness and occasional napping. Denham claims that she has crying spells every other day and that her depression interferes with her ability to care for her children.

The ALJ denied Denham's claim again on August 30, 2001 and the Appeals Council thereafter denied her request for review. Denham now asks this court to review her claim.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Deference should be given to an ALJ's determinations relating to credibility and should be reversed only if the determinations are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). However, an ALJ must provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford*, 227 F.3d at 872 (stating that an ALJ "must build an accurate and logical bridge from the evidence to his conclusion.").

## DISCUSSION

The SSA employs a five-step process to evaluate applicants for federal disability benefits. First, if an applicant is engaged in substantial gainful employment, that applicant does not qualify for disability insurance. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the applicant does not have a sufficiently severe physical or mental impairment, the SSA will deny disability insurance. *Id.* Third, if the applicant's impairment or combination of impairments satisfies or is medically equivalent to one of a series of enumerated disability "listings," the SSA will find that the applicant is disabled. *Id.* Fourth, the SSA calculates the applicant's "residual functional capacity" ("RFC") with the impairment, and if the SSA finds that the applicant can still perform the same relevant work after the

impairment as before, the SSA will deny benefits. *Id.* Finally, using the same RFC along with the applicant's age, education and work experience, the SSA determines whether the applicant can adjust to other work, in which case the SSA will deny disability insurance. *Id.*

This process is structured so that if an applicant satisfies steps one through three, the inquiry ends and the SSA finds the applicant disabled. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). However, if the applicant satisfies the first two steps but does not satisfy the third, the inquiry proceeds to the fourth and, possibly, fifth steps. *Id.* Denham claims that the ALJ in her case erred at three points in his analysis. First, she suggests that he failed to evaluate the credibility of her testimony accurately in light of the medical evidence presented. Second, she argues that the ALJ did not adequately consider whether her combined impairments were medically equivalent to a disability listing at step three. Finally, Denham also contends that the ALJ failed to consider all of the necessary medical and vocational evidence in calculating and applying her RFC at step four.

I. Credibility

The ALJ in Denham's case did not find her testimony credible regarding both the intensity of her physical pain and the severity of her mental impairment. Applicants for disability insurance cannot rely solely upon their own claims of pain or other symptoms to establish their disability, but must also produce medical evidence of an underlying impairment which could "reasonably be expected" to

7

produce those symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a). If medical evidence supports the applicant's complaints, the ALJ must consider the applicant's subjective symptomatic claims as well. *Clifford*, 227 F.3d at 871. In considering these claims, the ALJ should also consider other relevant factors, including the applicant's daily activities, precipitating and aggravating factors, medications and other treatment, and functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c), 416.929(c). However, a discrepancy between the applicant's claims and the degree of impairment suggested by the medical evidence is "probative that the witness may be exaggerating her condition." *Powers*, 207 F.3d at 435-36.

At the hearing before the ALJ Denham complained about severe pain. Where the medical evidence presented by an applicant is either internally inconsistent or inconsistent with other evidence in the record, the ALJ may discount that medical evidence. *Knight*, 55 F.3d at 314. As the ALJ notes in his decision, the objective medical evidence in this case is conflicting at best in establishing any underlying medical impairments that could cause Denham's pain. In particular, the ALJ notes that Denham's doctors never actually found any conclusive medical evidence of bilateral osteoarthritis in her knees or carpal tunnel syndrome in her wrists, although she makes some claims regarding both conditions. We therefore find no error in the ALJ's disposition of those claims.

The ALJ treats Denham's claims of chronic neck and back pain with greater deference, in light of more substantial medical history for that condition, although he still discounts the degree of pain that Denham claims from this impairment. First,

the ALJ notes that a series of doctors have prescribed various treatments for Denham's back pain, while also noting that her objective tests were "basically normal," showing only a "slight curvature of the spine and L5 sacralization." R. at 14-15. Because of this discrepancy, the ALJ notes that "no objective findings" support the breadth of treatment prescribed by Denham's treating physicians. *Id.* at 14. While Denham contends that the ALJ improperly substituted his own judgment for a medical opinion in reaching this conclusion, we disagree. Where medical evidence does not fully support a doctor's diagnosis, the ALJ need not afford "great weight" to that diagnosis. *Veal v. Bowen*, 833 F.2d 693, 699 (7th Cir. 1987); *see also Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)(stating that an ALJ may place less emphasis on portion of doctor's report that is based only on applicant's own statements about functional restrictions).

The ALJ did not rely solely upon this assessment, however, and considered the other factors set out in 20 C.F.R. §§ 404.1529(c), 416.929(c) as well. In his decision, the ALJ summarizes Denham's testimony regarding her condition, including a detailed description of her daily activities and some discussion of her work history following the accident. R. at 14-15. He also notes Denham's medications, TENS treatment, and other relief measures, including her need to prop herself up while sitting or laying down to alleviate her pain. *Id.* Finally, the ALJ considered the functional limitations stated in a report from Dr. Young-Ja Kim, a physician who reviewed the medical evidence in the record. R. at 15, 106-13. Ultimately, the ALJ concluded that this evidence supported a claim of "chronic neck

and back pain," although not of the degree claimed by Denham, and we find no reversible error in the ALJ's conclusion.

Finally, the ALJ discounted several of Denham's claims regarding her mental state, such as her claims of frequent crying spells and a significantly impaired ability to concentrate. The ALJ relied upon several pieces of evidence in this conclusion. First, he notes that Denham has previously refused treatment for her depression, claiming that she did not feel such treatment was necessary because she was "not suicidal." R. at 15. Where the level or frequency of treatment for a condition is inconsistent with the applicant's claims of symptoms, the ALJ may find those statements discreditable, so long as the ALJ considers the applicant's alternative explanations for failure to seek treatment. Soc. Sec. Rul. 96-7p. Here, Denham's only explanation is that she did not feel her depression was severe enough to warrant treatment. In light of her refusal of treatment, the ALJ did not err by giving less weight to Denham's statements.

The ALJ also felt that Denham's daily activities suggested that her concentration was less impaired than she claimed. These activities include driving her children to school, driving herself to doctor's appointments, watching television, and attending church for two hours on Sundays. R. at 14. While we note that the Seventh Circuit is "skeptical" that watching television indicates a significant ability to concentrate, we agree with the ALJ that daily driving does necessitate a degree of concentration. *See Powers*, 207 F.3d at 435. While Denham argues that the ALJ erred by failing to consider expressly whether her prescribed Amitriptyline regimen

10

contributed to her decreased concentration, we note that the ALJ need not address every piece of evidence in his decision. *See, e.g. Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). We find that Denham's daily driving while taking Amitriptyline is significant enough evidence to support the ALJ's conclusion that Denham's concentration was only "mildly impaired." R. at 15.

In addition, the ALJ twice reiterates Denham's statements that she has no problems getting along with others, suggesting that her social functioning is not significantly impaired by her depression. In light of these facts, the ALJ found that Denham suffered only from "mild depression" and a "mildly impaired" ability to concentrate related to her chronic pain, and we do not find that this determination was patently wrong. *Id.*

## II. Listings and Medical Equivalence

Denham also contends that the ALJ failed at step three of the evaluation process which requires the ALJ to determine if the applicant's impairment or combination of impairments satisfies or is medically equivalent to one of a series of enumerated disability listings. Denham argues that the ALJ failed to adequately consider her claim that her combined impairments were medically equivalent to a listing under 20 C.F.R. § 404 App. 1. The applicant has the burden of proving medical equivalency at step three. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Equivalency must be based on "medical findings," which consist of "symptoms" (applicant's description of the impairment), "signs" (clinically

11

diagnosed abnormalities), and "laboratory findings" (abnormalities diagnosed by laboratory techniques). 20 C.F.R. §§ 404.1526, 416.926, 404.1528, 416.928.

We first note that, at the hearing before the ALJ, Denham limited her assertion of equivalency to a global statement without pointing to any particular listing or drawing the ALJ's attention to the particular impairments raised in her summary judgment motion. Because the applicant has the burden of proving equivalency, a more specific claim of equivalency would have been appropriate. In particular, we note that if the SSA had obtained an opinion against medical equivalency, Denham's argument on this point would likely fail. *See Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)(stating that where consulting physicians finds against equivalency, the ALJ may adopt consulting opinion without significant explanation if applicant presents no contradictory medical evidence specifically supporting equivalency). However, we find no such equivalency opinion in the record for either party and must therefore evaluate the specific conditions that Denham raises.

We find that the ALJ erred by failing to analyze two of Denham's alleged impairments: 1) her obesity, and 2) her decreased flexion. Although the ALJ considered the aggregate effect of Denham's controlled asthma, chronic neck and back pain, mild depression, and inability to concentrate in assessing medical equivalency, the record makes no mention of Denham's obesity or spinal flexion. Even though the ALJ does not have to discuss every piece of evidence in his decision, he "may not ignore an entire line of evidence that is contrary to the ruling" because that prevents the reviewing court from determining whether substantial

evidence supports his opinion. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). We cannot determine from the record whether the ALJ considered Denham's obesity or flexion in his decision and thus, we cannot be sure that substantial evidence supports the conclusion and must remand. *Id.*

While obesity is no longer a separate listing in the C.F.R., the SSA still requires adjudicators to consider the effects of obesity on an applicant's disability claim. Soc. Sec. Rul. 02-1p; *see also Clifford*, 227 F.3d at 873. In fact, the listings for both musculoskeletal and respiratory impairments specifically note the potential impact of obesity on those conditions. 20 C.F.R. § 404 App. 1 at 1.00(Q), 3.00(I). While the issue of Denham's obesity was not as prominent in the record as many of her other impairments, we still find that it was sufficiently raised to alert the ALJ that it was relevant to the inquiry. *See Clifford*, 227 F.3d at 873 (stating that an ALJ should consider impairments raised by the evidence, even if not claimed in the applicant's disability report). Dr. Burnet diagnosed Denham's obesity on August 21, 2000, and suggested that it aggravated her back pain. R. at 139. This diagnosis became part of the record, as did Denham's own hearing testimony regarding her weight and weight gain. R. at 215. By completely excluding any mention of obesity from his decision, the ALJ has not shown that substantial evidence supports his conclusion regarding medical equivalency, and we therefore remand for consideration of Denham's obesity. *Clifford*, 227 F.3d at 873.

We also find that the ALJ erred by ignoring the conflicting analyses of Denham's flexion, particularly the conflict between Dr. Labanauskas and Dr. Kim.

13

While the ALJ may discount contradictory evidence, he also has an "obligation" to resolve conflicting assessments of impairments that have a significant impact on the applicant's claimed disability. *Golembiewski*, 322 F.3d at 917. In *Golembiewski*, as here, the ALJ did not address conflicting doctors' reports regarding the applicant's ability to bend. *Id.* The Seventh Circuit found this omission significant because it bore directly upon the applicant's ability to perform the type of work suggested in the ALJ's opinion. *Id.*

In this case, the ALJ apparently accepted Dr. Kim's analysis as a non-treating, non-examining physician over that of Dr. Labanauskas, who actually examined and treated Denham. Dr. Kim found that Denham could lift 50 pounds occasionally and 25 pounds frequently, that she had unlimited push/pull ability, and that she could stoop, kneel, crouch and crawl frequently. AR. 107-08. In contrast, Dr. Labanauskas found that Denham had limited flexion and extension and recommended a rigorous course of treatment for her back problems. R. at 141. The ALJ cannot simply ignore Dr. Labanauskas' opinion where it could have such a substantial impact on the outcome. *Golembiewski*, 322 F.3d at 917. While substantial evidence may support the ALJ's decision to give Dr. Kim's report controlling weight, we cannot determine the ALJ concluded so from the record before us. Accordingly, we direct the ALJ to address this discrepancy on remand as well.

### III. Residual Functional Capacity

Denham also claims that the ALJ made several errors at step four of the

14

evaluation process which requires the ALJ to evaluate the SSA's calculation of the applicant's "residual functional capacity" ("RFC") with the impairment. Denham first challenges the ALJ's finding that Denham has the RFC to perform medium work, as Dr. Kim's report suggested, noting that the ALJ did not consider Denham's obesity or possibly limited flexion. In addition, she claims that the ALJ's hypothetical question to the vocational expert ("VE") at her hearing was deficient both because it did not accurately capture her impairment and because it did not specifically address her past employment duties.

We agree with Denham's contention that the ALJ did not specifically consider her obesity or possible limited flexion. On remand, the ALJ may establish substantial evidence for giving controlling weight to Dr. Kim's report on the flexion dispute, but such evidence is lacking at present. In addition, it does not appear that Dr. Kim's report included Denham's obesity as a factor because it predates Dr. Burnet's diagnosis of obesity by roughly two months and because Dr. Kim never actually examined Denham. In addition, the record shows that Denham was gaining weight during the relevant period, suggesting that even if Dr. Kim considered Denham's weight, Denham likely weighed more by the time that Dr. Burnet examined her. Therefore, if the ALJ again reaches step four on remand, he should independently consider Denham's obesity at that step as well.

15

### III. Use of Hypothetical Questions

During Denham's hearing the ALJ posed hypothetical questions to the VE. We agree with Denham's contention that the ALJ's hypothetical questions to the VE did not include all of her relevant limitations. An ALJ may use hypothetical questions posed to a VE to ascertain an applicant's ability to perform past relevant work at step four of the evaluation process, but that question must incorporate all of the applicant's relevant limitations. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). However, a hypothetical question need not include claims for which there is no medical evidence, and if the VE indicates that he has reviewed the pertinent documentary evidence in the case, omitting that evidence from the question itself does not create reversible error. *Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993).

Since we cannot tell from the record whether the ALJ gave appropriate consideration to Denham's obesity, we also cannot tell whether the RFC assessment posed in the hypothetical to the VE is supported by substantial evidence. In addition, the ALJ gives no attention to the effect of Denham's "mildly impaired" concentration on her RFC. We note that while Dr. Kim found no such mental impairment in her report, the ALJ did, and should therefore consider its impact on Denham's RFC.

Denham argues that the ALJ's hypothetical about her RFC was too general regarding her specific job duties. We disagree. An ALJ cannot describe a job generally by its exertional category and then conclude by merely conducting an

16

analysis of the applicant's RFC that the applicant can return to that job. *E.g. Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991). However, in this case, despite the VE's references to Denham's previous jobs by their exertional classification, substantial evidence suggests that both the VE and ALJ conducted a deeper inquiry into the requirements of those positions. First, the VE disqualified some positions because they required exposure to dust, fumes, odors and temperature extremes, which requires a more detailed analysis than mere exertional categories alone would provide. R. at 243.

In addition, while we cannot say whether substantial evidence supported the ALJ's decision to accept Dr. Kim's findings, we note that none of Denham's duties at either her jewelry sales or funeral director positions exceeded the RFC limitations assessed by Dr. Kim. R. at 96-97 (Denham's own description of her job duties). We believe that the ALJ considered Denham's job descriptions and found that nothing therein exceeded the suggested RFC, making specific job duty questions redundant. We do not expect an ALJ to establish in a hypothetical that an applicant can lift a maximum of 50 pounds only to require him to ask in the next question whether the applicant can lift 40 pounds. In short, the ALJ should ask questions about specific job duties where the record suggests specific limitations that are contrary to the applicant's assessed RFC. On remand, if the ALJ finds that Denham's obesity, flexion, or impaired concentration call into question Denham's ability to perform specific job duties, he should specifically address such limitations in his hypothetical questions to the VE.

## CONCLUSION

Based on the foregoing analysis, we deny the motions for summary judgment and remand this case to the ALJ for proceedings in accordance with this opinion.

                                                Samuel Der-Yeghiayan
                                                United States District Court Judge

Dated: July 23, 2004